No. 26-2705

---

# United States Court of Appeals for the Eighth Circuit

---

MAYDAY HEALTH and NANCY TURBAK BERRY,
*Plaintiffs-Appellees*,

v.

GOVERNOR LARRY RHODEN, in his official capacity, and ATTORNEY GENERAL MARTY JACKLEY, in his official capacity,
*Defendants-Appellants*.

---

On Appeal from the United States District Court
for the District of South Dakota
No. 4:26-cv-04096

---

**Brief for Amicus Curiae States of Arkansas, Louisiana, and 16 States in Support of Appellants and Reversal**

---


LIZ MURRILL
Louisiana Attorney General

J. BENJAMIN AGUIÑAGA
Solicitor General

LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov

*Counsel for Amicus Curiae State of Louisiana*

TIM GRIFFIN
Arkansas Attorney General

AUTUMN HAMIT PATTERSON
Solicitor General

OFFICE OF THE ARKANSAS ATTORNEY GENERAL
101 West Capitol Avenue
Little Rock, Arkansas 72201
(501) 682-2007
autumn.patterson@arkansasag.gov

*Counsel for Amicus Curiae State of Arkansas*

## Table of Contents

Table of Contents ....... i

Table of Authorities ....... ii

Introduction and Interest of Amicus Curiae ....... 1

Summary of the Argument ....... 3

Argument ....... 4

I. Entities and Individuals Are Actively Interfering with States' Compelling Interest in Enforcing Their Abortion Laws Within Their Borders ....... 4

II. Intentional Efforts to Subvert States' Abortion Laws Undermine our Constitutional Structure and Violate States' Sovereignty ....... 10

III. The District Court Erred by Truncating Its Analysis of the Preliminary-Injunction Factors ....... 12

Conclusion ....... 15

Certificate of Compliance ....... 17

Certificate of Service ....... 18

## Table of Authorities

**Cases** **Page(s)**

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*,
576 U.S. 787 (2015) ........................................................ 3

*Benisek v. Lamone*,
585 U.S. 155 (2018) (per curiam) ........................................ 13, 14

*BMW of N. Am., Inc. v. Gore*,
517 U.S. 559 (1996) ........................................................ 11

*Brown v. Fletcher's Est.*,
210 U.S. 82 (1908) ........................................................ 11

*Danco Lab'ys, LLC v. Louisiana*,
146 S. Ct. 1192 (2026) ........................................................ 5

*Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*,
108 F.4th 194 (3d Cir. 2024) ........................................................ 13

*Dobbs v. Jackson Women's Health Org.*,
597 U.S. 215 (2022) ........................................................ 1-5, 8, 10

*Eggers v. Evnen*,
48 F.4th 561 (8th Cir. 2022) ........................................................ 13

*Evenwel v. Abbott*,
578 U.S. 54 (2016) ........................................................ 3

*Franchise Tax Bd. v. Hyatt*,
587 U.S. 230 (2019) ........................................................ 10, 11

*Gray v. Jennings*,
145 S. Ct. 1049 (2025) ........................................................ 13

*Kansas v. Colorado*,
206 U.S. 46 (1907) .......... 11

*Louisiana v. Nouhavandi*,
No. 2:26-cv-03836 (W.D. La.) .......... 7

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
584 U.S. 453 (2018) .......... 11

*NetChoice, LLC v. Fitch*,
145 S. Ct. 2658 (2025) .......... 13

*Nken v. Holder*,
556 U.S. 418 (2009) .......... 13

*Rhode Island v. Massachusetts*,
37 U.S. (12 Pet.) 657 (1838) .......... 10, 11

*Rodgers v. Bryant*,
942 F.3d 451 (8th Cir. 2019) .......... 13, 14

*Shelby County v. Holder*,
570 U.S. 529 (2013) .......... 3, 11-12

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) .......... 14

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .......... 12-13, 15

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980) .......... 11

**Rules & Statutes**

Ark. Code § 5-61-303 .......... 2

Ark. Code § 5-61-304 .......... 2

Ark. Code § 5-61-403 .......... 2

Ark. Code § 5-61-404 .......... 2



Appellate Case: 26-2705 Page: 4 Date Filed: 10/19/2026 Entry ID: 5696002

Ark. Code § 20-16-1504 .......... 2

S.D. Codified Laws § 22-17-5.1 .......... 5

S.D. Codified Laws § 22-17-5.3 .......... 5

S.D. Codified Laws § 34-23A-1.2 .......... 4

Fed. R. App. P. 29 .......... 3

**Other Authorities**

*Abortion Pills, Coercion, and Abuse*,
The Heritage Foundation (Mar. 10, 2026),
https://www.heritage.org/life/commentary/abortion-pills-coercion-and-abuse .......... 10

*After* Roe *Fell: U.S. Abortion Laws by State*,
Ctr. for Reproductive Rights,
https://reproductiverights.org/maps/abortion-laws-by-state/ .......... 2

Joseph Garcia, *Lawsuit filed against nonprofit that flew abortion pill ad over Kentucky State Fair*, WHAS11abc (Sept. 3, 2026),
https://www.whas11.com/article/news/politics/lawsuit-filed-against-nonprofit-that-flew-abortion-pill-ad-over-kentucky-state-fair/417-759cb5b9-8c19-4bb8-a9c4-30e42475a270 .......... 6

Lorena O'Neil, *Louisiana, New York leaders spar after doctor indicted for out-of-state abortion pill prescription*,
Louisiana Illuminator (Feb. 1, 2025),
https://lailluminator.com/2025/02/01/abortion-pills-2/ .......... 9

Madeline Halpert, *New York doctor indicted for prescribing Louisiana teen abortion pill*,
BBC (Jan. 31, 2025),
https://www.bbc.com/news/articles/cjr8jv2yjz9o .......... 9

Madelyn Hanes, *Indy 500 spectators see campaign promoting abortion pill*,
Indiana Capital Chronicle (May 27, 2025),
https://indianacapitalchronicle.com/2025/05/27/indy-500-spectators-see-campaign-promoting-abortion-pill/ .......... 6



Appellate Case: 26-2705 Page: 5 Date Filed: 10/19/2026 Entry ID: 5696002

Rosemary Westwood, *After historic indictment, doctors will keep mailing abortion pills over state lines*,
NPR (Mar. 19, 2025),
https://www.npr.org/sections/shots-health-news/2025/03/19/nx-s1-5312115/margaret-carpenter-indictment-telemedicine-abortion-louisiana-mail-mifepristone-misoprostol ........ 9

Minyvonne Burke, *Texas attorney who poisoned pregnant wife with abortion medication sentenced to 180 days in jail*,
NBC News (Feb. 9, 2024),
https://www.nbcnews.com/news/us-news/texas-attorney-poisoned-pregnant-wife-abortion-medication-sentenced-18-rcna138065 ........ 9-10

New York State, *On Eve of Dobbs Decision Anniversary, Governor Hochul Signs Legislation Strengthening Access to Reproductive Health Care* (June 23, 2023)
perma.cc/H426-VEX7. ........ 8

New York State, *Protecting Reproductive Freedom: Governor Hochul Signs Legislation Affirming New York's Status as a Safe Haven for Reproductive Health Care* (Feb. 3, 2025)
perma.cc/QN8R-4WEL ........ 9

New York State, *Video, Audio, Photos & Rush Transcript: Governor Hochul Makes a Reproductive Freedom Announcement* (Feb. 13, 2025)
perma.cc/W5FT-AE9J. ........ 9

Nina Martin, *How Blue States Got Around the GOP's Efforts to Ban Abortion in Red States*,
Mother Jones (Mar. 17, 2026),
perma.cc/PE5Y-YR33 ........ 8

Nina Martin, *She's Remaking the Abortion Landscape One Pill at a Time*,
Mother Jones (July 31, 2026),
https://www.motherjones.com/politics/2026/07/shes-remaking-the-abortion-landscape-one-pill-at-a-time/ ........ 6



Appellate Case: 26-2705 Page: 6 Date Filed: 10/19/2026 Entry ID: 5696002

#WeCount Report
Society of Family Planning, https://societyfp.org/research/wecount/wecount-december-2025-data/ ............ 5



Appellate Case: 26-2705 Page: 7 Date Filed: 10/19/2026 Entry ID: 5696002

## Introduction and Interest of Amicus Curiae

In our constitutional system, the States are co-equal sovereigns, each possessing the power and responsibility to regulate within its borders to protect the health and safety of its residents. Amici States, the States of Arkansas, Louisiana, Alabama, Florida, Georgia, Indiana, Iowa, Kansas, Kentucky, Mississippi, Missouri, Montana, Nebraska, Noth Dakota, South Carolina, Tennessee, Texas, and West Virginia all exercise this sovereign authority to regulate within their borders.

When the Supreme Court "heed[ed] the Constitution and return[ed] the issue of abortion to the people's elected representatives" in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215, 232 (2022), voters in amici States became free to "regulate abortion for legitimate reasons," including the "respect for and preservation of prenatal life at all stages of development" and "the protection of maternal health and safety," *id.* at 300–01. Amici States listened to their voters and, through the democratic process, enacted abortion prohibitions and restrictions that Amici States found necessary to protect unborn babies and the health of women and girls.

For example, Arkansas prohibits abortion, except where necessary to save the life of the mother. It specifically defines abortion to include "prescribing, administering, procuring, or selling" abortion drugs; and makes it unlawful for



Appellate Case: 26-2705 Page: 8 Date Filed: 10/19/2026 Entry ID: 5696002

anyone "to provide any abortion-inducing drug via courier, delivery, or mail service." Ark. Code §§ 5-61-303(1)(A), 5-61-304(a), 5-61-403(1)(A), 5-61-404(a), 20-16-1504(b). And to the extent a doctor exercising reasonable medical judgment determines a life-saving abortion using abortion drugs is necessary, Arkansas erects several safeguards to protect the woman's health, including an in-person examination requirement before abortion drugs can be dispensed. *Id.* § 20-16-1504(c). Other Amici States have enacted similar laws that protect not only the lives of unborn babies, but also women and girls who face serious risks from abortion drugs. *See After* Roe *Fell: U.S. Abortion Laws by State*, Ctr. for Reproductive Rights, https://reproductiverights.org/maps/abortion-laws-by-state/.

Yet entities and individuals have intentionally sought to undermine the democratically enacted laws of pro-life States like Amici by implementing a scheme where persons illegally advertise abortion drugs in States that prohibit abortion, misrepresent the risks involved, illegally ship those drugs to addresses in those States, and instruct women and girls to lie to physicians if they need emergency care after taking the abortion drugs. This violates Amici States' laws and is an affront to their sovereignty. Because Amici States have an interest in protecting their citizens, preserving our constitutional structure, and ending the willful subversion of *Dobbs*,

they file this amicus brief under Rule 29(a)(2) of the Federal Rules of Appellate Procedure.

## Summary of the Argument

Our constitutional system recognizes that each State has co-equal sovereignty to regulate within its borders. This is crucial to the "harmonious operation" of our Republic, *Shelby County v. Holder*, 570 U.S. 529, 544 (2013) (citation omitted), allows States to operate as laboratories of democracy, *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 817 (2015); *Evenwel v. Abbott*, 578 U.S. 54, 89 (2016) (Thomas, J., concurring), and ensures "each State [can] regulate abortion" and other issues "as its citizens wish," *Dobbs*, 597 U.S. at 230. Yet the ability of South Dakota and Amici States to regulate within their borders is currently under attack by out-of-state actors like Mayday Health.

Discontent with pro-life States' laws that protect the lives of unborn babies and the health and safety of women and girls, these out-of-state actors are working together to flout those laws by advertising illegal services online in those States, accepting payment for dangerous abortion drugs from individuals in those States, and illegally shipping such drugs into those States. These actions have tragic consequences for unborn babies, not to mention for women and girls who face increased risks from abortion drugs taken without medical safeguards, such as



Appellate Case: 26-2705 Page: 10 Date Filed: 10/19/2026 Entry ID: 5696002

informed consent and examinations to ensure they do not have an ectopic pregnancy or other contraindications. These actions also undermine our constitutional structure by disregarding States' co-equal sovereignty.

The district court, however, failed to properly account for any of this in its preliminary-injunction decision. Instead, it glossed over the balance-of-the-equities and public-interest factors after wrongly concluding Plaintiffs would likely succeed on the merits of their constitutional claim. But Plaintiffs' undermining of South Dakota's abortion laws causes significant harm to the public interest, including weakening a foundation of our constitutional structure and threatening unborn babies' lives and girls' and women's health. Plaintiffs accordingly have failed to show they are entitled to the extraordinary relief of a preliminary injunction, and this Court should reverse and vacate the preliminary injunction.

## ARGUMENT

### I. ENTITIES AND INDIVIDUALS ARE ACTIVELY INTERFERING WITH STATES' COMPELLING INTEREST IN ENFORCING THEIR ABORTION LAWS WITHIN THEIR BORDERS.

After the Supreme Court "heed[ed] the Constitution and return[ed] the issue of abortion to the people's elected representatives," *Dobbs*, 597 U.S. at 232, pro-life States became free to regulate abortion within their borders as they see fit. South Dakota did so. Finding that abortions "terminate the life of a whole, separate, unique, living human being," S.D. Codified Laws § 34-23A-1.2, South Dakota



Appellate Case: 26-2705 Page: 11 Date Filed: 10/19/2026 Entry ID: 5696002

generally prohibits abortion, absent an "appropriate and reasonable medical judgment that performance of an abortion is necessary to preserve the life of the pregnant female," *id.* § 22-17-5.1. And South Dakota prohibits "knowingly dispens[ing], distribut[ing], sell[ing], or advertis[ing]" abortion drugs for the "purpose[] of an unlawful abortion." *Id.* § 22-17-5.3. These laws serve the "legitimate interests" of South Dakota, including "respect for and preservation of prenatal life at all stages of development" and "the protection of maternal health and safety." *Dobbs*, 597 U.S. at 301. Yet despite *Dobbs*' promise that citizens of each State may decide for themselves how to regulate abortion, out-of-state actors are intent on thwarting South Dakota's laws and the laws of other pro-life States.

Notwithstanding *Dobbs*—and notwithstanding South Dakota and Amici States' laws—abortions have proliferated by the thousands within pro-life States' borders. *See* #WeCount Report, Society of Family Planning, https://societyfp.org/research/wecount/wecount-december-2025-data/. That is not because of local doctors or nurses risking arrest by violating those laws, but because of an army of individuals and organizations in States like California, New York, and Massachusetts fixed on perpetrating "a scheme to undermine [the Supreme Court's] decision in *Dobbs*." *Danco Lab'ys, LLC v. Louisiana*, 146 S. Ct. 1192, 1193 (2026) (Alito, J., dissenting). Such persons and organizations—



Appellate Case: 26-2705 Page: 12 Date Filed: 10/19/2026 Entry ID: 5696002

"eager … to help thwart red-state attorneys general and subvert [what they view as] draconian laws"—openly target States where abortion is banned with limited exceptions.[1]

Various entities operate websites advertising abortion drugs, and some additionally adopt a far more aggressive advertising approach. For example, Mayday has advertised on billboards and at gas stations in South Dakota. Appellants' Br. 2, 32, 57. And South Dakota is far from Mayday's only target. This fall, Mayday flew a plane with a large banner to advertise illegal mail-order abortion drugs at the Kentucky State Fair,[2] and it did the same thing at the Indianapolis 500 last summer.[3] Some entities, like Mayday, facilitate illegal abortions in pro-life States by advertising abortion drugs in States where they are illegal and steering website visitors to entities

---

[1] *See* Nina Martin, *She's Remaking the Abortion Landscape One Pill at a Time*, Mother Jones (July 31, 2026), https://www.motherjones.com/politics/2026/07/shes-remaking-the-abortion-landscape-one-pill-at-a-time/ (explaining The Massachusetts Medication Abortion Access Project sends 95% of its abortion-drug shipments to States with bans and strict regulations).

[2] Joseph Garcia, *Lawsuit filed against nonprofit that flew abortion pill ad over Kentucky State Fair*, WHAS11abc (Sept. 3, 2026), https://www.whas11.com/article/news/politics/lawsuit-filed-against-nonprofit-that-flew-abortion-pill-ad-over-kentucky-state-fair/417-759cb5b9-8c19-4bb8-a9c4-30e42475a270.

[3] Madelyn Hanes, *Indy 500 spectators see campaign promoting abortion pill*, Indiana Capital Chronicle (May 27, 2025), https://indianacapitalchronicle.com/2025/05/27/indy-500-spectators-see-campaign-promoting-abortion-pill/.

that illegally ship abortion drugs or use mail-order pharmacies to do so. Other entities both advertise abortion drugs and handle their own shipments after "pill-packing parties,"[4] while others partner with mail-order pharmacies.[5]

Such organizations have been emboldened in their scheme by two developments. First, the Biden Administration made changes to the in-person dispensing requirements for the abortion drug mifepristone. Second, pro-abortion states passed so-called "shield laws."

Beginning during the COVID-19 pandemic—and then permanently in January 2023—the Biden Administration eliminated a longstanding in-person dispensing requirement for the abortion drug mifepristone as approved by the U.S. Food and Drug Administration (FDA). That Administration's action unlocked the door to the broad-scale, mail-order abortion scheme that has emerged. Purported shield laws then blew that door open.

The persons and entities running the unlawful scheme mostly reside in pro-abortion States that have enacted so-called "shield laws," which are intended to prevent those perpetuating this interstate abortion scheme from legal liability. In

---

[4] *See supra* note 1.

[5] How abortion drugs are ordered online and shipped to pro-life States is detailed further in a complaint recently filed by Louisiana, Arkansas, and Alabama. *See* Complaint, *Louisiana v. Nouhavandi*, No. 2:26-cv-03836 (W.D. La.).

essence, a shield law attempts to protect (from liability in pro-life states and professional repercussions in shield-law states) a doctor in, say, Massachusetts who wishes to engage in "telemedicine" by prescribing and shipping abortion drugs into a pro-life state that strictly regulates abortion. According to proponents, "[s]hield laws are designed to thwart the near-total abortion bans and other restrictions that have proliferated in red states since the 2022 *Dobbs* decision."[6] New York Governor Kathy Hochul, for example, has explained that shield laws "protect [those] who prescribe and send abortion pills to patients in states where abortion is outlawed."[7]

Because the avowed purpose of "shield laws" is to facilitate abortions in pro-life States, not in shield-law States, the "shield laws" are not shields at all. Instead, they are swords wielded by out-of-state actors to undermine pro-life States' ability to regulate abortion within their own borders and protect unborn babies and women and girls' health. A recent tragic case in Louisiana illustrates the problem. A pregnant teenager in Louisiana, who was planning a gender reveal party, was coerced into taking abortion drugs prescribed by a New York doctor, hemorrhaged during the

---

[6] Nina Martin, *How Blue States Got Around the GOP's Efforts to Ban Abortion in Red States*, Mother Jones (Mar. 17, 2026), perma.cc/PE5Y-YR33.

[7] New York State, *On Eve of Dobbs Decision Anniversary, Governor Hochul Signs Legislation Strengthening Access to Reproductive Health Care*, at 14:00-14:20 (June 23, 2023), perma.cc/H426-VEX7.



Appellate Case: 26-2705 Page: 15 Date Filed: 10/19/2026 Entry ID: 5696002

medication abortion, and required emergency care.[8] When a Louisiana grand jury indicted the New York doctor, Louisiana issued an extradition request.[9] Governor Hochul not only denied the extradition request, but also signed an amendment to New York's shield law exempting those prescribing abortion drugs from the general legal requirement that providers' names appear on drug labels, making it even harder for pro-life States to identify who is willfully breaking their laws.[10] And sadly, this is far from the only case where women and girls in pro-life States have been coerced into taking illegal mail-order abortion drugs or have consumed beverages poisoned with illegal abortion drugs by abusers.[11]

---

[8] Lorena O'Neil, *Louisiana, New York leaders spar after doctor indicted for out-of-state abortion pill prescription*, Louisiana Illuminator (Feb. 1, 2025), https://lailluminator.com/2025/02/01/abortion-pills-2/.

[9] Madeline Halpert, *New York doctor indicted for prescribing Louisiana teen abortion pill*, BBC (Jan. 31, 2025), https://www.bbc.com/news/articles/cjr8jv2yjz9o; Rosemary Westwood, *After historic indictment, doctors will keep mailing abortion pills over state lines*, npr (Mar. 19, 2025), https://www.npr.org/sections/shots-health-news/2025/03/19/nx-s1-5312115/margaret-carpenter-indictment-telemedicine-abortion-louisiana-mail-mifepristone-misoprostol.

[10] New York State, *Protecting Reproductive Freedom: Governor Hochul Signs Legislation Affirming New York's Status as a Safe Haven for Reproductive Health Care* (Feb. 3, 2025), perma.cc/QN8R-4WEL ("*2025 Signing Ceremony*") (video embedded); New York State, *Video, Audio, Photos & Rush Transcript: Governor Hochul Makes a Reproductive Freedom Announcement* (Feb. 13, 2025), perma.cc/W5FT-AE9J.

[11] *See, e.g.*, Minyvonne Burke, *Texas attorney who poisoned pregnant wife with abortion medication sentenced to 180 days in jail*, NBC News (Feb. 9, 2024), https://www.nbcnews.com/news/us-news/texas-attorney-poisoned-pregnant-



Appellate Case: 26-2705 Page: 16 Date Filed: 10/19/2026 Entry ID: 5696002

South Dakota and amici States' laws exist for a reason: to protect life and to ensure that appropriate safeguards are in place in the narrow circumstances where an abortion might be permitted. Today, however, abortion drugs are flooding into their States as entities like Mayday openly defy their laws.

## II. INTENTIONAL EFFORTS TO SUBVERT STATES' ABORTION LAWS UNDERMINE OUR CONSTITUTIONAL STRUCTURE AND VIOLATE STATES' SOVEREIGNTY.

The intentional and coordinated effort to undermine pro-life States' ability to regulate abortion within their borders is a direct attack on States' equal sovereignty and threatens our constitutional structure. After *Dobbs*, pro-abortion States may be free to deregulate abortion as they see fit, but neither they nor their residents are entitled to take actions in pro-life States that violate those States' laws and subvert their sovereign authority to regulate within their borders.

After declaring independence, the States "considered themselves fully sovereign nations" possessing "all the rights and powers of sovereign states." *Franchise Tax Bd. v. Hyatt*, 587 U.S. 230, 237 (2019) (citation omitted). And "[a] sovereign decides by his own will, which is the supreme law within his own

wife-abortion-medication-sentenced-18-rcna138065; Melanie Israel, *Abortion Pills, Coercion, and Abuse*, The Heritage Foundation (Mar. 10, 2026), https://www.heritage.org/life/commentary/abortion-pills-coercion-and-abuse (collecting cases).

boundary." *Rhode Island v. Massachusetts*, 37 U.S. (12 Pet.) 657, 737 (1838). Indeed, a sovereign historically had the power to "declare war, make peace," and "contract alliances" "to settle [its] controversies with a foreign power." *Id.* To be sure, the Constitution's ratification "limits [State's] sovereignty in several ways." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 470 (2018); *see Hyatt*, 587 U.S. at 245-46. Unlike "absolutely independent nations," States cannot use force to resolve disputes with their neighbors. *Kansas v. Colorado*, 206 U.S. 46, 98 (1907). But the Constitution's ratification "did not abolish the sovereign powers of the States." *Murphy*, 584 U.S. at 470.

To the contrary, "[t]he sovereignty of each State … implie[s] a limitation on the sovereignty of all of its sister States." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980). Our Constitution thus embodies "a fundamental principle of *equal* sovereignty among the States," *Shelby County v. Holder*, 570 U.S. 529, 544 (2013) (citation omitted) (emphasis in original), where "the independence of one implies the exclusion of power from all others," *Brown v. Fletcher's Est.*, 210 U.S. 82, 89 (1908). That means pro-abortion States cannot "impose [their] own policy choice[s] on neighboring States," *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 571 (1996), nor can out-of-state actors.

Indeed, each State's equal sovereignty—and the attendant authority to regulate for the health and safety of its citizens within its borders—"is essential to the harmonious operation of the scheme upon which the Republic was organized." *Shelby County*, 570 U.S. at 544 (citation omitted). South Dakota thus must be allowed to enforce its laws designed to protect unborn babies and women and girls' health within its borders—including against out-of-state actors who intentionally target South Dakota and seek to override its policy choices.

## III. The District Court Erred by Truncating Its Analysis of the Preliminary-Injunction Factors.

The district court did not consider this broader context when it issued its opinion. Instead, after conducting a myopic analysis and concluding Defendants were likely to prevail on the merits of their First Amendment claim, the district court gave short shrift to the remaining preliminary-injunction factors. App. 41-42, R. Doc. 51, at 41-42. The court effectively assumed that when plaintiffs show likely success on a First Amendment claim, then all preliminary-injunction factors necessarily collapse into the likelihood-of-success prong. That's wrong.

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). In assessing whether such extraordinary relief is justified, the Supreme Court has mandated four preliminary-

injunction factors, emphasized "the importance of assessing the balance of equities and the public interest," and criticized a district court for addressing those "considerations in only a cursory fashion." *Id.* at 26; *see Eggers v. Evnen*, 48 F.4th 561, 564-65 (8th Cir. 2022) (explaining "[t]he balance-of-harms and public-interest factors 'merge when the Government'—or, in this case, a state official in his official capacity—'is the [nonmoving] party'" (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009))). It's thus wrong to "collapse[] the four factors into one," and "success on the first factor is not enough." *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 202 (3d Cir. 2024), *cert. denied sub nom., Gray v. Jennings*, 145 S. Ct. 1049 (2025).

Accordingly, while this Court has concluded that a plaintiff who shows likely success on a First Amendment claim will "[g]enerally" be able to satisfy the other factors, *Rodgers v. Bryant*, 942 F.3d 451, 456 (8th Cir. 2019), that "maxim is not absolute and only gets the court so far," *id.* at 466 (Stras, J., concurring in part and dissenting in part). After all, "a preliminary injunction does not follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits." *Benisek v. Lamone*, 585 U.S. 155, 158 (2018) (per curiam). And that's true even in the First Amendment context. *See NetChoice, LLC v. Fitch*, 145 S. Ct. 2658 (2025) (Kavanaugh, J., concurring in application denial). "[E]ven in First Amendment



Appellate Case: 26-2705 Page: 20 Date Filed: 10/19/2026 Entry ID: 5696002

cases," the district court must evaluate the other factors in a non-cursory fashion "and show its work." *Rodgers*, 942 F.3d at 466 (Stras, J., concurring) (citing *Benisek*, 585 U.S. at 158).

The district court failed to do so here. For example, it ignored the well-established principle that States suffer an "irreparable injury" "any time" they are enjoined "from effectuating statutes enacted by representatives of [their] people." *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025) (citation omitted). Perhaps the district court assumed this principle doesn't apply when a court concludes there's a likely First Amendment violation based on the public's "compelling interest in protecting its First Amendment rights." App. 42; R. Doc. 51, at 42. But a State's irreparable harm occurs "any time" its democratically enacted statutes cannot be implemented, *CASA*, 606 U.S. at 681; it doesn't evaporate with the district court's (incorrect) determination that Plaintiffs would likely prevail on a constitutional claim.

Furthermore, the district court overlooked the harm to Defendants and the public caused by Plaintiffs' calculated efforts to undermine South Dakota's abortion laws in its balancing of the equities. Women and girls are being deceived about the risks of abortion drugs and the legality of those drugs in South Dakota and suffering medical complications; unborn babies are losing their lives; and the public, not to



Appellate Case: 26-2705 Page: 21 Date Filed: 10/19/2026 Entry ID: 5696002

mention Amici States, are being harmed by the undermining of our constitutional structure and state sovereignty. *See supra* Parts I-II. Plaintiffs here have fallen far short of making a "clear showing" that they are entitled to the "extraordinary remedy" of preliminary injunctive relief. *Winter*, 555 U.S. at 22.

## Conclusion

For the foregoing reasons, this Court should reverse and vacate the district court's preliminary-injunction order.



Appellate Case: 26-2705 Page: 22 Date Filed: 10/19/2026 Entry ID: 5696002

Respectfully submitted,

TIM GRIFFIN
Arkansas Attorney General

AUTUMN HAMIT PATTERSON
Solicitor General
OFFICE OF THE ARKANSAS
ATTORNEY GENERAL
101 West Capitol Avenue
Little Rock, Arkansas 72201
(501) 682-2700
autumn.patterson@arkansasag.gov

*Counsel for Amicus Curiae*
*State of Arkansas*

LIZ MURRILL
Louisiana Attorney General

J. BENJAMIN AGUIÑAGA
Solicitor General
LOUISIANA DEPARTMENT OF
JUSTICE
1885 N. Third St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov

*Counsel for Amicus Curiae State*
*of Louisiana*



Appellate Case: 26-2705 Page: 23 Date Filed: 10/19/2026 Entry ID: 5696002

## ADDITIONAL COUNSEL

STEVE MARSHALL
Alabama Attorney General

JAMES UTHMEIER
Florida Attorney General

CHRISTOPHER M. CARR
Georgia Attorney General

THEODORE E. ROKITA
Indiana Attorney General

BRENNA BIRD
Iowa Attorney General

KRIS W. KOBACH
Kansas Attorney General

RUSSELL COLEMAN
Kentucky Attorney General

LYNN FITCH
Mississippi Attorney General

CATHERINE L. HANAWAY
Missouri Attorney General

AUSTIN KNUDSEN
Montana Attorney General

MICHAEL T. HILGERS
Nebraska Attorney General

DREW WRIGLEY
North Dakota Attorney General

ALAN WILSON
South Carolina Attorney General

JONATHAN SKRMETTI
Tennessee Attorney General

KEN PAXTON
Texas Attorney General

JOHN B. MCCUSKEY
West Virginia Attorney General

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7))(B) because it contains 3,094 words, excluding the parts exempted by Fed. R. App. P. 32(f).

I also certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in 14-point Equity A, using Microsoft Word.

I further certify that this PDF file was scanned for viruses, and no viruses were found on the file.

/s/ *Autumn Hamit Patterson*
Autumn Hamit Patterson

## Certificate of Service

I certify that on October 16, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to any CM/ECF participants.

/s/ *Autumn Hamit Patterson*
Autumn Hamit Patterson



Appellate Case: 26-2705 Page: 26 Date Filed: 10/19/2026 Entry ID: 5696002